UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| In re Erich Lantz and Cindy Lantz,<br><br>Debtors. | Bankruptcy No. 10-B-73859<br>Chapter 7<br>Judge Manuel Barbosa |
|---|---|

## MEMORANDUM OPINION

This matter comes before the Court on the Trustee's objection to claim of exemption in two bank accounts and a table saw. However, today's ruling relates only to a single issue relating to the claim of exemption in the savings account at Associated Bank, which the parties agreed to submit to the Court for a ruling on that issue.

### JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### FACTS AND BACKGROUND

At issue in this case is whether a section of the Illinois homestead exemption statute which exempts the proceeds of the sale of a homestead for one year applies if the bankruptcy petition was filed before the one year period expired but either the debtor subsequently chose not to invest the

proceeds in a new homestead or the debtor never had an intent to reinvest the proceeds in a new homestead.

The primary facts are not in dispute. The Debtors sold their homestead in Rockford, IL, on July 31, 2009, for which they received $53,746.86 at closing. They deposited these sale proceeds into a bank account at Associated Bank and claimed an exemption in the $9,000 remaining in the account when they filed for protection under Chapter 7 of the Bankruptcy Code just under a year later, on July 30, 2010.[1] The Debtors claimed the amount exempt under 735 Ill. Comp. Stat. 5/12-906, and the Trustee filed a timely objection. The Trustee argued first that the exemption did not apply because Debtor Cindy Lantz testified at the 341 meeting of creditors that she had no intent to use the remaining proceeds to invest in a new homestead, but might instead use it towards the purchase of a vehicle. Second, the Trustee argued that the exemption did not apply because as of the time she filed her objection on October 27, 2010, it had been over a year since the sale and the proceeds had not been reinvested in a homestead.

## DISCUSSION

11 U.S.C. § 522(b)(3) allows bankruptcy debtors to exempt property that would be exempt under the laws of the state indicated by that section, which for this case is Illinois.[2] The purpose of

---

[1] The Chapter 7 Trustee indicated she might argue that the funds in the account are not in fact traceable to the sale proceeds, but the parties agreed to submit the matter for the Court's ruling on the initial legal question of whether the exemption is barred by the one-year requirement or by the asserted intent requirement. Together with the traceability argument, the parties also reserved argument on how the exemption should be applied between the proceeds already spent and the proceeds remaining in the account. Additionally, the Trustee's objection contained an objection to the Debtors' claim of exemption in a checking account at Alpine Bank and a table saw, and this opinion will not address either of these claims of exemption.

[2] 11 U.S.C. §522(b)(2) allows the debtor to choose between the exemptions provided by the applicable state or the set of federal exemptions provided in 11 U.S.C. §522(d), unless the applicable state opts to force the debtor to choose the state exemptions. Because Illinois has so "opted-out" of the federal exemptions, only the Illinois state exemptions are applicable in this case.

Section 522(b)(3) "is to afford a state an opportunity to substitute its judgment for that of the Congress with respect to what property ought to be excluded from the bankruptcy estate." In re Geise, 992 F.2d 651, 658 (7th Cir. 1993). The basic task of the bankruptcy court in interpreting the state statute "is to discern the will of the state legislature: what was the exemption scheme that the legislature wished to make available to the state's residents as an alternative to the federal exemptions set forth in the Bankruptcy Code?" Id. As with any question of state law, "when the highest court in the state has not spoken we must attempt to predict how we believe that court would decide," and in that endeavor we "look to decisions of intermediate appellate courts in the state for persuasive guidance." Abstract & Title Guar. Co. v. Chicago Ins. Co., 489 F.3d 808, 811 (7th Cir. 2007) (internal citations omitted).

Illinois provides for an exemption for every individual in a "homestead to the extent in value of $15,000 of his or her interest in a farm or lot of land and buildings thereon, a condominium, or personal property, owned or rightly possessed by lease or otherwise and occupied by him or her as a residence, or in a cooperative that owns property that the individual uses as a residence." 735 Ill. Comp. Stat. 5/12-901. The same statute further provides:

> When a homestead is conveyed by the owner thereof, such conveyance shall not subject the premises to any lien or incumbrance to which it would not be subject in the possession of such owner; <u>and the proceeds thereof, to the extent of the amount of $15,000, shall be exempt from judgment or other process, for one year after the receipt thereof, by the person entitled to the exemption, and if reinvested in a homestead the same shall be entitled to the same exemption as the original homestead</u>.

735 Ill. Comp. Stat. 5/12-906 (emphasis added).

### (A)   The Exemption for Proceeds Contains no Requirement that the Debtor Intend to Invest them in a New Homestead

The homestead exemption statute does not contain an express requirement that the owner intend to use the proceeds to purchase a new homestead. It simply states that, if the proceeds are reinvested in a new homestead the new homestead will be entitled to the original exemption, and therefore debtors are not entitled to claim two homestead exemptions – in the remaining proceeds and in the new homestead – at the same time. No reported Illinois cases have read such an intent requirement into the statute. However, the Trustee cites a bankruptcy case from the Central District of Illinois which held that such a requirement is implied by the homestead statute taken as a whole. In re Zielgler, 239 B.R. 375 (Bankr. C.D. Ill. 1999) (Altenberger, J.); see also In re Sizemore, No. 00-83455, 2001 WL 34079528 (Bankr. C.D. Ill. Apr. 26, 2001) (Perkins, J.) (adopting the reasoning from In re Ziegler).

In Ziegler, Judge Alternberger reasoned, first, that Illinois case law had implied an intent requirement with respect to the general homestead exemption. Id. at 378. As he stated, "[i]ntent plays a critical role in the entitlement to a homestead exemption, both in its creation and in its abandonment." Id. While the general homestead exemption statute does not refer to intent, it contains an express requirement that the property "be occupied" by the debtor "as a residence." 735 Ill. Comp. Stat. 5/12-901. From this, Illinois courts have held that a "right to a homestead may be lost by voluntary abandonment without any intention of returning." Rasmussen v. Rasmussen, 368 Ill. 137, 140, 13 N.E.2d 166, 168 (Ill. 1938). The courts have held that a temporary absence will not

necessarily result in abandonment, if when the debtor leaves he or "she intends to return and acquires no homestead elsewhere." Id., 368 Ill. at 140-41, 13 N.E.2d at 168. However, a "removal from the homestead premises will be taken as an abandonment unless it clearly appears that there is an intention to return and occupy them." Id., 368 Ill. at 141, 13 N.E.2d at 168. Such intent to return "must be unequivocal, for an equivocal intention to return is not sufficient." Id. Therefore, in order to assert the general homestead exemption, the debtor must have intended the property at issue to constitute his or her residence.

Next, Judge Altenberger reasoned that Section 12-906 was not an independent exemption for proceeds. Rather, it had to be viewed as "a continuation or extension of the general homestead exemption granted by § 12-901." In re Ziegler, 239 B.R. at 379. He cited People v. Stitt, 7 Ill. App. 294 (Ill. 1880), for the proposition that the "aim of § 12-906 is to protect the proceeds from the sale of a homestead until they can be reinvested in another." Ziegler, 239 B.R. at 379.[3] Since Judge Altenberger viewed the purpose of the proceeds exemption as a statute "to aid homeowners in maintaining their status as homeowners," he found that the purpose or policy would not apply if the debtor had no intent to purchase a new homestead. Id. Therefore, Judge Altenberger concluded that "under § 12-906, proceeds received upon the sale are entitled to protection only if there is a good faith intent to reinvest the proceeds in another homestead." Id.

I respectfully disagree with Judge Altenberger's reasoning on this point. No Illinois court has read such an intent requirement into the exemption statute and, based on Illinois' principles of

---

[3] In actuality, the supreme court stated that "the money received in exchange for the homestead should also be exempt until, at least, it could be re-invested according to the statute." Stitt, 7 Ill. App. 294 (emphasis added).

statutory construction, I do not believe the Illinois Supreme Court would acknowledge such a requirement if the issue was before it. Under Illinois law, the "plain language of a statute is the best indication of the intent of the legislature." Maksym v. Bd. of Election Comm'rs of City of Chicago, 2011 WL 242421, at *8 (Ill. Jan. 27, 2011) (citing Devoney v. Ret. Bd. of the Policemen's Annuity & Benefit Fund, 199 Ill. 2d 414, 424-25, 769 N.E.2d 932 (Ill. 2002)). Therefore, where "the statutory language is clear and unambiguous, we will enforce it as written and will not read into it exceptions, conditions, or limitations that the legislature did not express." Id. No intent requirement appears in the language of Section 12-906. Instead, the statute simply says that "the proceeds ... shall be exempt ... for one year after the receipt thereof." 735 Ill. Comp. Stat. 12-906. Although the statute makes reference to reinvestment, the reinvestment is not a condition to the exemption. Instead, the statute states that the proceeds shall be exempt for one year "and if reinvested in a homestead the same shall be entitled to the same exemption as the original homestead." Id. (emphasis added).

Furthermore, "this circuit and the courts in Illinois have consistently held that personal property exemption statutes should be liberally construed in order to carry out the legislature's purpose in enacting them-to protect debtors." In re Barker, 768 F.2d 191, 196 (7th Cir. 1985) (citing In Re Schriar, 284 F.2d 471, 473-74 (7th Cir.1960); In re Feilchenfeld, 99 F.2d 710, 711 (7th Cir.1938); Finlen v. Howard, 126 Ill. 259, 262, 18 N.E. 560, 561 (1888); Washburn v. Goodheart, 88 Ill. 229, 231 (1878); Burns v. Turner, 193 Ill. App. 172, 175 (1915); McClellan v. Powell, 109 Ill.App. 222, 225 (1902)). In line with the "clear legislative intent to grant protections to debtors and the courts' liberal construction of exemption statutes ... where an exemption statute might be interpreted either favorably or unfavorably vis-á-vis a debtor, we should interpret the statute in a

manner that favors the debtor." In re Barker, 768 F.2d 191, 196 (7th Cir. 1985). See also, In re Marriage of Logston, 103 Ill. 2d 266, 279-80, 469 N.E.2d 167, 172-73 (Ill. 1984) (original personal property exemption statutes were based on "the humane principle, that a creditor should not wholly deprive the husband and father of the means of supporting his family, usually helpless in themselves, and preventing them from becoming a public charge," and "much the same purpose is attributed to exemption legislation today, with the debtor, his family, and the community being viewed as the intended beneficiaries of such statutes") (internal citations omitted). Similar to the set of exemptions for personal property, the homestead exemption is also to be liberally construed. See, e.g., People v. 1403 East Parham Street, 251 Ill. App. 3d 198, 204, 621 N.E.2d 1026, 1031 (Ill. App. Ct. 1993); Scogin v. Scogin, 337 Ill. 427, 430, 169 N.E. 201, 202 (Ill. 1929) (homestead exemption statute should be "liberally interpreted" to protect surviving spouse).

Moreover, grafting an intent requirement onto the statute seems inconsistent with numerous statements and holdings by the Illinois courts. For example, in interpreting the similar language in the predecessor to the current statute, which also provided that the proceeds of the sale of a homestead would be exempt for one year, the Illinois Supreme Court asked rhetorically, "Suppose, in such a case, the debtor, after receiving the money, should remove to a different State, would any one suppose that it would change the right to hold the money exempt from execution? The statute has made no such exception or restriction." Bliss v. Clark, 39 Ill. 590 (Ill. 1864). In a 1955 case, the Illinois Supreme Court stated that the "statutory exemption extends as well to the proceeds of the sale for the period of one year, and to the reinvestment of the proceeds in another homestead."

La Placa v. La Placa, 5 Ill. 2d 468, 472, 126 N.E.2d 239, 242 (Ill. 1955) (emphasis added). In Slattery v. Keefe, 201 Ill. 483, 66 N.E. 365 (Ill. 1903) the supreme court found that the proceeds exemption did not apply since the homestead owner had voluntarily transferred the estate to her daughter for no consideration, noting that there were "no proceeds to be exempt from execution, and none to reinvest in a homestead." 201 Ill. at 489 (emphasis added). By using the word "and" in these cases, which is also used in the statutory language, the one-year exemption in proceeds is described as being in addition to the exemption for reinvested property. Reinvestment is not a condition to the one-year exemption. In Reade v. Kerr, the appellate court described the one-year exemption without listing any requirements or conditions, stating that the garnishment act would not "defeat [homeowner's] right to hold as exempt for one year, the proceeds of the sale of a homestead, and insurance money due him for loss on building, exempted as a homestead, as provided in Secs. 6 and 7 of the Homestead Exemption Act." 52 Ill. App. 467 (Ill. App. Ct. 1894) (emphasis added).

Even the Illinois Supreme Court case cited by Judge Altenberger for the policy behind the exemption seems inconsistent with Judge Altenberger's implied intent requirement. The main holding of the court in Stitt was that even though the "literal terms [of the statute] would not apply to any case except where the owner himself makes the sale," the exemption for proceeds applied equally where the sale of the homestead was involuntary. Stitt, 7 Ill. App. 294. The Trustee argues that, by selling the homestead with no intent to reinvest the proceeds in a new one, the Debtors have "abandoned their homestead." But the holding in Stitt that debtors whose homestead has been involuntarily sold can claim the exemption in proceeds is not consistent with such an affirmative intent requirement. Where the sale is involuntary, the homestead owner would have no intent at all, since he or she takes no action. Additionally, the court in Stitt later referred to the proceeds

exemption as though it were absolute. In analyzing Section 12-908 of the statute, dealing with judicially ordered sales, the court noted: "But can it be doubted that the money would be [exempt], <u>for at least one year</u>, the same as in section [12-906]; otherwise there would be no protection for the homestead right in case of sale." <u>Stitt</u>, 7 Ill. App. 294 (emphasis added).

Finally, protection in the proceeds of a homestead for a limited period would not be a 'windfall' or inconsistent with the policy enumerated in <u>Stitt</u> even if the debtor does not reinvest the proceeds in a new homestead. When the court in <u>Stitt</u> stated that "it was the intention of the legislature to protect a party in his homestead," 7 Ill. App. 294, I place more emphasis on the term "protect" than the word "homestead." Therefore, I read the purpose to be to protect homeowners in their primary asset and their place of shelter, as opposed to a statute designed to encourage investment in homesteads. In a much more recent case than <u>Stitt</u>, which was from the 19th century, the appellate court stated much more broadly that the "purpose of the homestead exemption is to provide the debtor with the necessary shelter or the means to acquire shelter required for his welfare during difficult economic circumstances." <u>Bank of Illmo v. Simmons</u>, 142 Ill. App. 3d 741, 745, 492 N.E. 2d 207, 211 (Ill. App. Ct. 1986) (citing <u>State Bank of Antioch v. Nelson</u>, 132 Ill. App.3d 120, 123, 477 N.E.2d 77, 79 (Ill. App. Ct. 1985)).[4] I therefore believe the purpose of the proceeds exemption is to <u>either</u> protect the ability of debtors whose homestead has been sold to purchase a new home <u>or</u> to at least protect up to $15,000 for a year for the debtors to live off of in temporary housing. In over one hundred years of Illinois jurisprudence no state court has referred to or imposed

---

[4] The court also noted that while the "homestead is traditionally described as an estate in land, under modern statutes it is in reality a monetary exemption so long as the value of the property exceeds the amount of the statutory exemption." <u>Id.</u> 492 N.E.2d at 211.

a requirement that the homestead owner must intend to invest the homestead proceeds in a new homestead in order to protect the proceeds for one year. Based on Illinois' policy of interpreting exemptions in real and personal property liberally in favor of debtors, and Illinois' rules of statutory interpretation holding that courts should not add judicially-created exceptions to clear statutory language, I find that there is no such intent requirement in the statute.

**(B)** **The Applicable Time for Determining the Applicability of the Exemption is the Date the Bankruptcy Petition was Filed.**

The Trustee also argues that at the time she objected to the exemption, the one-year period during which homestead proceeds are exempt had expired. She cites a Fifth Circuit Court of Appeals opinion, Zibman v. Tow (in re Zibman), in which the court held that a similar 6-month provision in a Texas homestead exemption statute continued to operate and terminated the exemption even though the statutory period ended post-petition. 268 F.3d 298 (5th Cir. 2001); see also England v. Golden (In re Golden), 789 F.2d 698 (9th Cir. 1986) (reaching same result under similar California law). The court noted that the state legislature had put the time limitation into the statute and, as the Supreme Court had noted in Owen v. Owen, "[n]othing in subsection (b) [of § 522] (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all." 500 U.S. 305, 111 S. Ct. 1833 (1991). The court then held that accepting the debtor's argument and "'freezing' the exemption for the proceeds simply because it was in effect at the date the petition was filed" would "effectively read the 6-month limitation out of the statute, and transform[] an explicitly limited exemption into a permanent one." Zibman, 268 F.3d at 304. This Court, however, is not bound by the Fifth or Ninth Circuits, and I

disagree with the Zibman and Golden courts' reasoning. But even accepting *arguendo* that the states have the power to create exemptions which will 'expire' in bankruptcy after the petition date, I do not believe that Illinois has attempted to use that power in its homestead statute.

A "chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period,'" Katchen v. Landy, 382 U.S. 323, 328-29 (1966) (internal citation omitted); Superintendent of Ins. v. Ochs (In re First Central Fin. Corp.), 377 F.3d 209, 217 (2d Cir. 2004). In a Chapter 7 proceeding for an individual, this goal is met by liquidating the debtor's assets, whereby "after surrendering his non-exempt property for the benefit of his creditors, the debtor is discharged from what remains of most of the debts he owed as of the date the bankruptcy petition was filed." In re Turner, 156 F.3d 713, 717 (7th Cir. 1998). In making the determination of how to liquidate and distribute the assets of the estate, the rights of the debtor and the rights of creditors are generally determined as of the petition date. Under Section 541(a), "the time of the petition (the 'commencement of the case,') is the key point for identifying the assets of the estate." In re Meyers, 616 F.3d 626, 628 (7th Cir. 2010) (internal citation omitted).[5] Under Section 502(b), the rights of holders of claims and interests are fixed as of the petition date. Carrieri v. Jobs.com Inc., 393 F.3d 508, 527 (5th Cir. 2004). In accordance with Section 522, "exemptions are determined as of the date the bankruptcy petition was filed." In re Karr, 278 Fed. Appx. 741 (9th Cir. 2008).

---

[5] Certain types of property not relevant here may become property of the estate after the petition date. See, e.g., 11 U.S.C. § 541(a)(5).

Because the bankruptcy system is based on a determination of rights as of the petition date, the holding in Zibman and Golden has been rejected by courts in Illinois. As Judge Gorman in the Central District has noted in criticizing Zibman, "[c]ourts interpreting Illinois exemption laws have traditionally followed a 'snap-shot' rule holding that exemptions are determined as of the date of a case filing." In re Snowden, 386 B.R. 730, 734 (Bankr. C.D. Ill. 2008) (citing In re Summers, 108 B.R. 200, 203 (Bankr. S.D. Ill.1989)). Therefore, "[d]evelopments which occur after filing should not impact on the entitlement to an exemption properly claimed at filing." Id. (citing In re Walston, 190 B.R. 855, 859 (Bankr. S.D. Ill.1996)).

On the other hand, even if eligibility for an exemption is based on the law and facts in existence at the time of the petition, the court in Zibman argued that the time limitation in the statute was itself a fact in existence. As the court stated, when "a debtor elects to avail himself of the exemptions the state provides, he agrees to take the fat with the lean; he has signed on to the rights … but also to the limitations (like the temporal element of the reinvestment feature of California's homestead exemption in Golden) integral in those exemptions as well." Zibman, 268 F.3d at 304. The court was concerned about giving a debtor greater rights in bankruptcy than he or she would have under state law. Just as the bankruptcy estate could not receive a fee interest in real property from the debtor under Section 541 if the debtor only had a life interest, the court argued the debtor should not receive a limitless exemption in proceeds if the state statute provided for a temporal limitation.

However, the court in Zibman mischaracterized the effect of the Bankruptcy Code. The Code does not modify the exemption, it simply determines the rights of pre-petition creditors to collect

from the debtor's assets, and makes that determination as of the petition date. Had any of the Debtors' pre-petition creditors issued a citation to discover assets in state court, as of the petition date they would not have been entitled to compel application of the homestead proceeds against their debt, since the one-year period had not expired as of that date. The fact that such determination by the Bankruptcy Code permanently affects the creditors' right to payment on their debt is no different than the effect of the discharge or numerous other key provisions in the Bankruptcy Code. Under state law, the pre-petition creditors might have been able to collect from the debtor's post-petition assets, but because of the discharge under the Bankruptcy Code, they are permanently prevented from doing so. As Judge Pappas of the Ninth Circuit Bankruptcy Appellate Panel has stated:

> Congress has allowed the states to limit the exemptions available in bankruptcy to their residents in § 522(b)(1). But in § 522(b)(2)(A), the Code requires that the state law "applicable on the date of the filing of the petition" control in determining what exemptions a debtor may claim in a bankruptcy case. To me, while the former provision allows states to dictate what property is exempt, the latter provision instructs that the extent of exempt property is to be determined with reference to the facts as they exist on the date of the bankruptcy filing, not some later, unspecified date. That such a determination may give bankruptcy debtors additional rights as compared to those not in bankruptcy is nothing new given the remedial purposes of the bankruptcy laws. Bankruptcy is all about the modification of creditors' state law rights.
>
> Ford v. Konnoff (In re Konnoff), 356 B.R. 201, 209-10 (B.A.P. 9th Cir. 2006) (Pappas, J. concurring).

The Bankruptcy Code does not 'change' the state exemption in homestead proceeds into a 'permanent' exemption one, since the exemption for bankruptcy purposes only affects pre-petition creditors. Post-petition creditors are not bound by the debtor's discharge, and therefore if the Debtors fail to reinvest the proceeds in a new homestead, their post-petition creditors could seek to

collect against the proceeds. See 11 U.S.C. §727(b) (stating that the discharge "discharges the debtor from all debts that arose before" the petition date). In other words, the one-year limitation is still in effect, but because of the discharge and the operation of Section 522 can only be asserted by post-petition creditors.

This result is not fundamentally unfair. In many other situations courts have looked solely to the facts in effect as of the petition date to determine eligibility to claim an exemption, even where the effect of doing so might seem to be unfair or to give the debtor a windfall. Thus, in Polis v. Getaways, Inc. (In re Polis), 217 F.3d 899, 902 (7th Cir. 2000), the court of appeals looked solely to the value of the debtor's pending Truth in Lending claim as of the date of the petition for the purpose of determining whether the debtor had exceeded the monetary limit on her wildcard exemption. This was true even if a subsequent increase in value caused the claim to exceed that limit. Judge Posner noted that "[c]ommon stock that had traded at $100 a share on the date the petition for bankruptcy was filed might a month later be worth $1,000, and again the creditors would be out of luck if the debtor had exempted her shares by claiming the personal property exemption for them." Id. 217 F.3d at 902. The court acknowledged that the bankruptcy court and district court "were plainly disturbed by the prospect of windfall gains to a debtor who by virtue of having exempted a legal claim from bankruptcy and thus put it beyond the reach of her creditors emerges from bankruptcy owning free and clear what turns out to be a valuable asset," but criticized such reasoning and reversed the district court for ignoring the language and policy of the statute. Id. 217 F.3d at 902. In In re Crawford, No. 02-80176, 2001 WL 34076050 (Bankr. C.D. Ill. Apr. 25, 2001), Judge Perkins held that a debtor met the 'occupancy' requirement of the Illinois homestead statute and could validly claim the exemption where he occupied the premises as of the petition date, even though he had used the premises as

rental property until two weeks before the petition date and even though he moved out shortly after the petition date. The court found that the Illinois statute had no requirement that a debtor live in a home for a minimum duration, and since he "made the house his residence and his 'home,' [even] if only for a relatively brief period" it was "sufficient to qualify for the exemption." Id.

Additionally, I note that the effect of accepting the holding in Zibman and Golden could be to decrease the speed, certainty and finality of the administration of cases, jeopardizing the 'chief purpose' espoused in Katchen v. Landy, 382 U.S. 323 (1966) of a "prompt and effectual administration of the estate."[6] Judge Pappas of the Bankruptcy Appellate Panel for the Ninth Circuit raised this concern in his concurrence in Ford v. Konnoff (In re Konnoff), 356 B.R. 201 (B.A.P. 9th Cir. 2006). Although he joined the majority opinion because of the binding precedent set forth in the Ninth Circuit by In re Golden, 789 F.2d 698 (9th Cir. 1986), he criticized the "flawed foundation" in Golden, instead arguing for "the notion that exemption rights should be determined, finally, based upon the facts existing on the date the bankruptcy petition is filed." Konnoff, 356 B.R. at 209 (Pappas, J. concurring). He expressed fear that the holding of Golden and Zibman could mean that the debtor's rights were "in limbo" indefinitely, and could "motivate a trustee to postpone closing the case as long as there is any prospect that the debtor's circumstances may change." Id at 208-09. Numerous exemption statutes have requirements that might no longer be satisfied if circumstances

---

[6]While the court in Zibman cited Owen v. Owen for the proposition that the states can choose whatever exemptions they wish, the Supreme Court also noted that such policy was not "absolute" but instead must be applied "with whatever other competing or limiting policies the [Bankruptcy Code] contains. Owen v. Owen, 500 U.S. at 313 ("Just as it is not inconsistent with the policy of permitting state-defined exemptions to have another policy disfavoring waiver of exemptions, whether federal- or state-created; so also it is not inconsistent to have a policy disfavoring the impingement of certain types of liens upon exemptions, whether federal- or state-created.")

change post-petition. For example, the Illinois exemption for alimony or domestic support is limited "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." 735 Ill. Comp. Stat. 5/12-1001(g)(4). If the debtor's income were to increase in the future, such that a portion of the debtor's right to alimony was no longer "reasonably necessary," should his or her case be reopened to retroactively deny the exemption? If a debtor changes professions post-petition, does that mean the debtor would retroactively lose his or her right to an exemption in tools of the trade under 735 Ill. Comp. Stat. 5/12-1001(d), such that the trustee could liquidate the tools? As Judge Gorman has stated, "[a]bsent express statutory authority, a trustee should not be allowed to monitor a debtor's post-filing behavior and to revisit exemption claims if a debtor fails or is unable to maintain property in the form that made it exempt at the time of the case filing." In re Snowden, 386 B.R. 730, 734 (Bankr. C.D. Ill. 2008).

Finally, I note that this Court is not bound by the Fifth Circuit or the Ninth Circuit, and the state exemption law at issue here is an Illinois law, not Texas or California law. Even if Zibman is correct that a state legislature has the power to enact an exemption that will expire in bankruptcy post-petition, I do not believe the Illinois legislature had such intent. In Zibman, the court noted that the "object of the [Texas] proceeds exemption statute was *solely* to allow the claimant to invest the proceeds in another homestead, *not to protect the proceeds, in and of themselves*." Zibman, 268 F.3d at 305 (internal citation omitted).[7] In contrast, as noted in the prior section, the purpose of the Illinois statute was to provide the debtor with the necessary shelter or the means to acquire shelter required for his welfare during difficult economic circumstances. Moreover, as discussed in the

---

[7] Similarly, the court in Golden noted that the object of the California proceeds exemption statute was "to allow the debtor to substitute one family residence for another without facing a forced sale." 789 F.2d at 700 (citing Thorsby v. Babcock, 36 Cal. 2d 202, 222 P.2d 863, 865 (Cal. 1950)). The court also noted that "California law requires reinvestment in order to prevent the debtor from squandering the proceeds for nonexempt purposes." Id.

previous section, case law in Illinois holds that exemption statutes should be interpreted liberally to protect debtors. The Illinois statute at issue makes no specific reference to bankruptcy, and I see nothing in the statute demonstrating an intent to alter the way the Bankruptcy Code would otherwise apply the exemption. Therefore, I find that the only relevant time was the petition date, and since it is uncontested that the Debtors filed their petition within the one-year period set forth in the statute, the fact that the statutory period subsequently expired did not prevent them from validly claiming the exemption in their homestead proceeds.

## CONCLUSION

For the foregoing reasons, the Court finds that the Debtors are not barred from claiming the exemption in the Associated Bank savings account merely because they did not intend to reinvest the proceeds in a new homestead or because it has been more than one year since the homestead was sold. The Trustee is granted leave to file any supplemental pleadings on her objection to the exemption in the Associated Bank savings account on the grounds that the funds in the account are not traceable to the homestead proceeds, or on the Trustee's objection to claim of exemption in the checking account at Alpine Bank and table saw, on or before March 23, 2011. The Debtors are granted leave to file responsive pleadings on or before April 6, 2011.

DATE: March 9, 2011

The Honorable Manuel Barbosa
United States Bankruptcy Judge

## CERTIFICATE OF MAILING

The undersigned hereby certifies that the attached Memorandum Opinion has been served via First Class Mail on March 9, 2011.

Megan G Heeg
Ehrmann Gehlbach Badger & Lee
215 E. First Street, Suite 100
P.O. Box 447
Dixon, IL 61021

_____
Kimberly Conrad, Judicial Assistant