UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| In re Erich Lantz and Cindy Lantz, Debtors. | Bankruptcy No. 10-B-73859 Chapter 7 Judge Manuel Barbosa |
|---|---|

## MEMORANDUM OPINION

This matter comes before the Court on the Trustee's objection to claim of exemption in two bank accounts and a table saw. For the reasons set forth herein, the Court will grant the objection with respect to the table saw and checking account, but will deny the objection with respect to the savings account.

### JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### FACTS AND BACKGROUND

This Court entered a memorandum opinion in this case on March 9, 2011, finding that the fact that a year had passed without the Debtors reinvesting the sale proceeds from the sale of their homestead did not preclude them from asserting the one-year exemption for homestead proceeds under 735 Ill. Comp. Stat § 5/12-906 because the bankruptcy petition was filed before the one-year

Case 10-73859    Doc 46    Filed 07/13/11    Entered 07/13/11 16:39:30    Desc Main
              Document      Page 2 of 11

period expired. Most of the facts of the case are set out in detail in that opinion, and will not be repeated here. As noted in a footnote to the opinion, the Chapter 7 Trustee reserved her right to object to the Debtors' claim of exemption in homestead proceeds on the alternate theory that all or part of the funds in the bank account that the Debtors were seeking to exempt were not traceable to the homestead proceeds. With the Court's leave, the Trustee filed an amended objection to claim of exemption on April 26, 2011, to which the Debtors filed a response and the Trustee filed a reply.[1] The Debtors and the Trustee generally agree on the facts, but disagree on the proper method for tracing proceeds to a bank account where the proceeds have been commingled with other funds in an account.

The Debtors deposited $24,373.43 out of the homestead proceeds into their general checking account at Alpine Bank (the "1st Account") on July 31, 2009. Almost a month later, on August 21, 2009, they transferred $15,000 out of that account into a newly opened money market account at Associated Bank (the "2nd Account"). On or about May 25, 2010, they closed the 2nd Account and transferred the $9,242.77 then remaining in the account into a newly opened savings account at Associated Bank ("3rd Account"). On July 30, 2010, the Debtors filed their petition for protection under Chapter 7 of the Bankruptcy Code, and claimed that $9,000 of the $9,243.71 in the 3rd Account as of the petition date was traceable to the homestead proceeds.[2]

---

[1] The Trustee also objected to the Debtors' claim of exemption under the Illinois "wild-card" exemption in a checking account and a table saw, arguing that the Debtors had already exceeded the statutory limit for the exemption. The Debtors conceded the point, and therefore the Trustee's objection to those two claims of exemption will be sustained.

[2] The Debtors' Schedule C claims only a $9,000 exemption, but also only lists the value of the account as $9,000. While perhaps the Debtors wished to claim an exemption in the full account, including the additional $243.71 that was in the account at the time of the petition, the Supreme Court has recently held that, where a debtor lists a dollar amount as the value of a claimed exemption, the debtors are only claiming an exemption up to that

The 2nd Account and the 3rd Account were both segregated accounts. Other than accrued interest, the only source of the funds in the 3rd Account was the transfer from the 2nd Account when it was closed, and the only source of the funds in the 2nd Account was the transfer of the $15,000 from the 1st Account on August 21, 2009. However, the Trustee argues that the full $15,000 is not traceable to the homestead proceeds check because the initial deposit was commingled with other funds in the 1st Account. On the date the Debtors deposited $24,373.43 into the 1st Account, there was already a balance in the account of $884.26 from other sources. Then, between the time the check was deposited and the time $15,000 was transferred to the 2nd Account (the "Commingling Period"), the Debtors deposited an additional $7,721.96 into the 1st Account from other non-exempt sources, including the Debtors' salary. During the same period, the Debtors drew checks on the 1st Account or made payments or withdrawals from the account totaling around $16,000. According to the Debtors' bank statements, the lowest balance in the 1st Account during the Commingling Period was $16,568.91.

## DISCUSSION

Unlike other exemption statutes such as 735 Ill. Comp. Stat § 5/12-1001(h), which exempts "property that is traceable to" personal injury claims and certain other enumerated categories, the exemption for "the proceeds" from the sale of a homestead set forth in 725 Ill. Comp. Stat §

---

value and a trustee need not object to the exemption to preserve the estate's ability to recover value in the asset beyond the dollar value the debtor expressly declared exempt. Schwab v. Reilly, 130 S. Ct. 2652, 2669 (2010) ("Where, as here, a debtor accurately describes an asset subject to an exempt interest and on Schedule C declares the 'value of [the] claimed exemption' as a dollar amount within the range the Code allows, interested parties are entitled to rely upon that value as evidence of the claim's validity. Accordingly, we hold that Schwab was not required to object to Reilly's claimed exemptions in her business equipment in order to preserve the estate's right to retain any value in the equipment beyond the value of the exempt interest. ").

5/12-906 does not expressly mention 'traceability.' However, because the property that is sought to be exempted must be identifiable as the "proceeds" of the sale, there is at least some requirement to demonstrate that the debtor received the property directly in exchange for the homestead or through a series of transactions that can be 'traced' back to the sale of the homestead.[3] See In re Stewart, No. 10-81979, 2011 WL 1827571, at *3, n. 3 (May 12, 2011) ("The condition that the proceeds be traceable to the homestead is an implied condition."). The concept is not identical with the concept of traceability for statutes that expressly cover 'traceable' property, however. Statutes such as Section 5/12-1001(h) are broader than those that do not contain language covering all traceable property. See Fayette Cnty. Hosp. v. Reavis, 169 Ill. App. 3d 246, 250, 523 N.E.2d 693, 695 (Ill. App. Ct. 1988) (finding that, because section 12-1001(g) did not include language like that in 12-1001(h), the "legislature did not intend to exempt property which is traceable to social security benefits" and therefore the certificate of deposit purchased with social security benefits was not exempt under the statute); but see Auto Owners Ins. v. Berkshire, 225 Ill. App. 3d 695, 699, 588 N.E.2d 1230, 1233 (Ill. App. Ct. 1992) (noting that "the principle of *expressio unius est exclusio alterius*, applied in Reavis, has no place in interpreting the exemption statutes when to apply it would frustrate the purpose of the statutes" and that the "concept of tracing is part of Illinois law even where the exemption statute does not specifically provide for it"). If the statute does not include language expressly covering all traceable property, more must be demonstrated than that the funds or value exchanged to acquire the property at issue were exempt property. It must also be demonstrated that the property acquired is of a type such that it would not be inconsistent with the

---

[3] Under Fed. R. Bankr. P. 4003(c), it is the Trustee that "has the burden of proving that the exemptions are not properly claimed," so the Trustee has the burden of demonstrating that the source *cannot* be traced back.

policy behind the exemption to exempt it. As Illinois courts have stated with respect to exempt retirement benefits:

> A debtor may trace the exemption from the exempt asset to the liquid form, but the concept of tracing is not limitless. So long as the debtor continues to hold and to use the funds for the support of the debtor and his family, the exemption statutes require the exemption of funds traceable from exempt payments. Conversely, if the debtor transforms the support payments into an investment, the purpose of the statutes is not being met; the funds are not being used for support and thus should lose their exempt character. Thus, the exempt funds remain exempt so long as they retain the "quality of moneys."

Auto Owners Ins. v. Berkshire, 225 Ill. App. 3d 695, 698-99, 588 N.E.2d 1230, 1233 (Ill. App. Ct. 1992) (internal citations omitted); see also, In re Irwin, 371 B.R. 344 (Bankr. C.D. Ill. 2007) ("the settlement funds no longer retained the 'quality of moneys' or the 'attributes' of a workers' compensation settlement after they were used to pay off the lien on the vehicle"); cf. In re Jackson, 95 B.R. 590 (Bankr. C.D. Ill. 1989) (holding that the house purchased with life insurance proceeds could not be exempt under section 12-1001(f) because the life insurance proceeds had been "converted to another form of property" but that it was exempt under section 12-1001(h) because the house was "property that is traceable to ... a payment under a life insurance contract"). The Trustee does not dispute the Debtor's contention that a check deposited into a checking account, savings account or money market account retains the same 'quality of moneys' to constitute proceeds of a homestead. Instead, she argues that at least a portion of the funds in the account are not "identifiable proceeds" of the sale, because they are traceable to sources of funds other than the sale. It is in this sense, of 'identification' rather than 'quality,' that the term "tracing" or "traceable" shall be used for the remainder of the opinion.

In Illinois, depositing funds in an account that contains other funds does not necessarily

change their character or make them non-exempt. Instead, exempt funds "that are reasonably traceable retain their exemption even if they are commingled with other nonexempt funds in the same bank account." In re Merritt, 272 Ill. App. 3d 1017, 1021, 651 N.E.2d 680, 682 (Ill. App. Ct. 1995). Illinois courts have not made clear the proper method for tracing, however. The only published opinion that the Court is aware of that actually discusses the appropriate method for determining whether funds are "reasonably traceable" to exempt funds under Illinois law is Judge Gorman's opinion in In re Lichtenberger, 337 B.R. 332, 324 (Bankr. C.D. Ill. 2006), dealing with funds traceable to exempt social security benefits. Judge Gorman noted that courts in other jurisdictions have normally employed one of four methods of tracing exempt funds: "(i) the lowest intermediate balance approach, (ii) the last-in, first-out approach, (iii) the pro-rata approach, and (iv) the first-in, first-out approach." In re Lichtenberger, 337 B.R. 332, 324 (Bankr. C.D. Ill. 2006). She noted that in other contexts, Illinois courts had used both the lowest intermediate balance method and the first-in first-out method as a method of tracing commingled funds. For example, the lowest intermediate balance method has been used in Illinois to trace commingled trust funds where the trustee commingles trust funds with the trustee's own non-trust funds in a single account. In such cases "it will be presumed that the sums withdrawn were from moneys which the trustee had the right to expend in his own business and that the balance remaining includes the trust fund he has no right to use." People v. People's State Bank of Maywood, 354 Ill. 519, 535, 188 N.E. 853, 859-60 (Ill. 1933). The rule has also been applied to determine a secured creditor's interest in the "identifiable proceeds" of its collateral. See, e.g., C.O. Funk & Sons, Inc. v. Sullivan Equip., Inc., 89 Ill. 2d 27, 431 N.E.2d 370 (Ill. 1982); Van Diest Supply Co. v. Shelby Cnty. State Bank, 425 F.3d

437 (7th Cir. 2005); U.C.C. § 315(a) cmt. 3 (noting that the Uniform Commercial Code "permits the use of whatever methods of tracing other law permits with respect to the type of property involved" and that "[a]mong the 'equitable principles' whose use other law may permit is the 'lowest intermediate balance rule.'"). In other situations, Illinois courts have used the "first-in first-out" principle for tracing, most notably in determining how payments should be allocated. See, e.g., Vill. of Winfield v. Reliance Ins. Co., 64 Ill. App. 2d 253, 212 N.E.2d 10 (Ill. App. Ct. 1965). In Merritt, while the court did not specifically address the appropriate method for tracing, the court cited with approval NCNB Fin. Servs. Inc. v. Shumate, 829 F. Supp. 178 (W.D. Va. 1993), which had approved a first-in first-out determination of what funds were traceable to exempt social security benefits. 651 N.E.2d at 682.

Methods of tracing commingled funds are "an equitable substitute for the impossibility of specific identification" and therefore a court must "exercise case-specific judgment to select the method best suited to achieve a fair and equitable result on the facts before them." United States v. Henshaw, 388 F.3d 738, 741 (10th Cir. 2004). Thus in Winfield, even while choosing to apply the "first-in first-out" method in that case, the court stressed that "we have no thought to suggest that this or any other formula ... is of such inflexible validity as to admit of no exceptions" and noted that the "rule will not be applied where it produces an unjust result." 212 N.E.2d at 13 (quoting Carson v. Fed. Reserve Bank of New York, 172 N.E. 475 (N.Y. 1930)). Similarly, the "lowest intermediate balance rule is an equitable fiction that should not be employed where equity does not warrant the result." Lichtenberger, 337 B.R. at 324 (quoting In re Foster, 275 F.3d 924, 927 (10th Cir. 2001)). As Judge Perkins has noted:

> There is little, if any, significance to be placed upon the "commingling" of the exempt funds with nonexempt funds, or upon the inability to trace the repaid funds to the previously withdrawn funds, dollar for dollar. Account debits and credits are intangible representations of money, in the form of the drawee's promise to pay. In circumstances such as those before the Court, the focus should be on the debtor's intent, not on the physical or metaphysical path traveled by the asset in question.

Barber v. Dunbar (In re Dunbar), 313 B.R. 430, 438 n.8 (Bankr. C.D. Ill. 2004). Therefore, in selecting a method of tracing, a court should consider the intent of the parties, the policy underlying the exemption, and the general rule that exemption statutes are to be construed in favor of debtors.

In Lichtenberger, Judge Gorman ultimately concluded that the first-in first-out principle was the most appropriate method for determining whether funds in a commingled account were traceable to exempt social security benefits. Lichtenberger, 337 B.R. at 326. In so concluding, she relied heavily on the principle under Illinois law that "personal property exemption statutes are to be construed liberally to protect debtors" and that if "it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen." Id. at 324 (citing In re Barker, 768 F.2d 191, 196 (7th Cir. 1985)). However, the exemption at issue in Lichtenberger was the exemption for social security benefits, not the exemption for homestead proceeds. Moreover, here, it is the application of the lowest intermediate balance rule that would benefit the Debtors, not the first-in first-out method. While the various exemption statutes in Illinois law have similar policies, they are not identical, nor are the expectations as to how the exempt property will be used the same. The purpose for most of the personal property exemptions, including the exemption for social security and other public assistance benefits, is to ensure that debtors and their families have sufficient means to support themselves through difficult times without becoming a public charge." See, e.g., In re Marriage of Logston, 103

Ill. 2d 266, 279, 469 N.E.2d 167, 168 (Ill. 1984). There is therefore an expectation that the benefits will be used to pay ongoing daily expenses, which is consistent with the assumptions underlying the first-in first-out method. As the 7th Circuit Court of Appeals has stated with respect to the exemption for public benefits, the exemption "has nothing to do with funds on deposit long after their receipt and commingling with the debtor's other assets." In re Schoonover, 331 F.3d 575 (7th Cir. 2003). In contrast, the homestead exemption is somewhat more narrow, with the focus on maintaining a homestead. The "purpose of the homestead exemption is to provide the debtor with the necessary shelter or the means to acquire shelter required for his welfare during difficult economic circumstances." Bank of Illmo v. Simmons, 142 Ill. App. 3d 741, 745, 492 N.E. 2d 207, 211 (Ill. App. Ct. 1986) (citing State Bank of Antioch v. Nelson, 132 Ill. App.3d 120, 123, 477 N.E.2d 77, 79 (Ill. App. Ct. 1985)). It is true that I noted in my prior opinion in this case that I believe that the reference to "means to acquire shelter" in Illmo, together with the relatively long one-year period for protecting proceeds, means that the proceeds exemption is also intended to protect a debtor's ability to acquire temporary shelter for up to a year in temporary housing while searching for a permanent homestead. However, the emphasis is still on obtaining a long-term homestead, and therefore it would be more consistent with the policy behind the exemption to presume that any money from a commingled account spent on things other than acquiring a new homestead (or at least spent on rent for temporary housing) came from sources other than the homestead proceeds. The tracing method most consistent with that policy would be the lowest intermediate balance rule. I recognize that this causes some tension with the holding of Lichtenberger because of the fact that Lichtenberger also involved some non-exempt homestead

proceeds. The debtor in <u>Lichtenberger</u> filed his bankruptcy 4 months too late to claim an exemption in the homestead proceeds. He therefore wanted to use the first-in first-out rule of tracing to assume that he was using the non-exempt homestead proceeds for his daily living expenses rather than his monthly social security benefits. However, despite any tension in theoretical assumptions, ultimately the statute is to be construed in favor of the debtor on the issue at hand and it is the Trustee's burden to demonstrate that the exemption is improperly asserted. The Debtors argue that it was their intent to segregate the homestead proceeds and not use them for daily expenses unless they had to, and they did in fact move funds to a segregated account within a month of receiving the initial proceeds. Where the statute and case law do not require the funds to be segregated, the Debtors should not be punished simply because money happened to come into and go out of the 1st Account before they were able to set up the 2nd Account, at least unless the intermediate balance rule demonstrates that funds could not have constituted proceeds from the initial sale. Therefore, since the Debtors claim an exemption of $9,000 in the 3rd Account and the Trustee has not demonstrated that the balance in the 1st Account, 2nd Account or 3rd Account ever fell below $9,000[4] while funds attributable to the homestead proceeds were on deposit, the Trustee's objection to the claim of exemption in those funds will be denied.

## CONCLUSION

For the foregoing reasons, the Court will grant the Trustee's objection to claim of exemption under 735 <u>Ill. Comp. Stat.</u> §5/12-1001 in a table saw and a checking account at Alpine Bank, but

---

[4] Because the Debtors only seek of an exemption of $9,000, which is less than the initial deposit into the 3rd Account, or any balance in the account thereafter, the Court need not decide whether interest accrued on identifiable proceeds would itself constitute identifiable proceeds for purposes of the homestead exemption.

will deny the Trustee's objection to the Debtors' claim of exemption under 735 Ill. Comp. Stat. § 5/12-906 of $9,000 in a savings account at Associated Bank.

A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: July 13, 2011

/s/ Manuel Barbosa

The Honorable Manuel Barbosa
United States Bankruptcy Judge